STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF BUNCOMBE     2018 JUN -7 A 10: 23    FILE NO. 18 CVS 02406

BUNCOMBE CO., C.S.C.

RAB BUILDERS LLC;

               Petitioner,

v.                                 PETITION FOR WRIT
                                       OF CERTIORARI

BUNCOMBE COUNTY, a North
Carolina county and body politic,

               Respondent.

       NOW COMES RAB BUILDERS LLC (herein "Petitioner" and/or "RAB") and petitions the Superior Court of Buncombe County, North Carolina, pursuant to N.C. Gen. Stat. §153A-349 and N.C. Gen. Stat. §160A-393, to review a decision of the Respondent Buncombe County's zoning board of adjustment ("BOA") as hereinafter set out, by proceedings in the nature of certiorari, and in support thereof shows unto the Court as follows:

       1.      Petitioner is a Florida limited liability company authorized to do business in the State of North Carolina.

       2.      Buncombe County ("County") is a county and political subdivision organized under the laws of the State of North Carolina pursuant to Chapter 153A of the North Carolina General Statutes.

       3.      The BOA is an administrative agency of the County organized pursuant to law that is authorized by the County's zoning ordinance to grant conditional use permits where allowed in a particular use district, to grant variances and hear appeals of aggrieved parties from rulings of the County's zoning or code enforcement officers.

       4.      At all relevant times hereto, Petitioner possessed and still has a contract with Linmar Properties, LLC to purchase two parcels of land located at 423 Moffitt Road within Buncombe County with the following Parcel Identification Numbers: 9668-98-5747 and 9668-99-7242 (collectively "Site").

       5.      The Site consists of approximately 31.4 total acres. Approximately 7.621 acres comprise the parcel with PIN No. 9668-98-5747 ("First Parcel"). Approximately 23.771 acres comprise the other parcel with PIN No. 9668-99-7242 ("Second Parcel"), which land is separated from the First Parcel by Moffitt Road.

6. Moffitt Road, also known as Secondary Road (SR) 2409, is a public road or highway maintained by the North Carolina Department of Transportation.

7. By ordinance, the County has adopted zoning regulations applicable to its entire political limits and territorial jurisdiction ("County Zoning Ordinance").

8. Around March 12, 2018, RAB submitted an application to the County for a conditional use permit ("CUP") for a Level I Planned Unit Development on the Site ("Project") as provided for in Sec. 78-641 and Sec. 78-677 of the County Zoning Ordinance.

9. RAB's application, which is incorporated herein by reference, was complete and in compliance with the development plan requirements in Sec. 78-677(d) of the County's zoning ordinance. In all respects, RAB complied with the procedural requirements for requesting a conditional use permit for the Project as set forth in the County Zoning Ordinance.

10. The Site is zoned by the County R-2, Residential District. Planned unit developments, level I ("PUD") is an allowed use in R-2, subject to the issuance of a conditional use permit.

11. The intent of R-2 is stated in Sec. 78-640 of the County Zoning Ordinance as follows:

> The R-2 Residential District is primarily intended to provide locations for residential development and supporting recreational, community service and educational uses in areas where public water and sewer services are available or will likely be provided in the future. These areas will usually be adjacent to R-1 Residential Districts, will provide suitable areas for residential subdivisions requiring public water and sewer services, and in order to help maintain the present character of R-1 districts, will not allow manufactured home parks.

12. The R-2 district allows a wide range of residential, institutional and small-scale commercial uses, including, without limitation, single-family housing, duplexes, multi-family dwelling units, subdivisions, planned unit developments, community-oriented development, bed and breakfast inns, day care nurseries, group homes, health care facilities, libraries, rooming houses, schools, and vacation rentals.

13. Public water from the City of Asheville and public sewer services from the Metropolitan Sewerage District of Buncombe County are available at the Site. As part of the Project, RAB planned to connect to public water and public sewer.

14. The Site is surrounded on three (3) of its sides or boundaries to other property zoned R-2. The Site is adjacent to R-1 zoned property, located to the North across Moffitt Road.

15. The Project consisted of 214 residential dwelling units as follows: ten (10) 20-unit apartment buildings and seven (7) duplex buildings; a community clubhouse and pool.

16. The PUD provisions of the County Zoning Ordinance for a R-2 district allowed for a maximum density on the Site of twelve (12) dwelling units per acre. The proposed Project density for the Site was approximately seven (7) dwelling units an acre, which is about 58% of the allowable capacity.

17. As part of the Project, approximately 15.6 acres was planned to be preserved as open space, with a substantial buffer of mature trees along the Swannanoa River (with proposed trails) and along the perimeter of the proposed residential units. The main component of the open space plan was the preservation of the 7.621-acre First Parcel abutting the Swannanoa River.

18. As part of the Project, anticipated improvements were designed to avoid any extremely steep slopes on the Site.

19. As part of its CUP application, RAB submitted two environmental assessments of the Site, which submittals are not a requirement of the County Zoning Ordinance. Said reports, which are incorporated herein by reference, indicated that: (i) there were no streams or wetlands on the Site that would require review by the North Carolina Department of Environmental Quality (Division of Water Resources) or the Army Corp of Engineers; and (ii) there were no environmental hazards on the Site.

20. As part of its CUP application, RAB submitted a traffic impact analysis report by a North Carolina licensed professional engineer, which report is incorporated herein by reference ("Traffic Report"). Said report was not a requirement of the County Zoning Ordinance for processing RAB's application. In the Traffic Report, RAB's traffic engineer opined and later testified that the Project would not cause adverse traffic impacts on the adjacent roadway network. Specifically, the Project driveway's intersection with Moffitt Road would not degrade general roadway or driver safety at this intersection. The traffic engineer testified that the traffic anticipated to be generated from the Project would also not degrade the other intersections noted in the study.

21. A driveway permit from the North Carolina Department of Transportation, like other developments with driveways connecting to State roads, will be required. Said

State agency is delegated responsibility from the North Carolina General Assembly to protect the safety of the traveling public as a result of new driveway connections to State roads for new developments (N.C. Gen. Stat. §136-18(29).

22. As part of its CUP application, RAB requested vested rights to complete the Project for a period of five (5) years as provided for in Sec. 78-622(d)(2) of the County Zoning Ordinance.

23. RAB's request for a CUP came before the BOA for a hearing on April 11, 2018 ("April 11th Hearing").

24. The Project complied with all of the technical requirements of the County Zoning Ordinance for a PUD in the R-2 district, including, without limitation, the dimensional requirements for development such as density, building height, setbacks, lot sizes (Sec. 78-642), off-street parking (Sec. 78-658), lighting (Sec. 78-668), the CUP development plan standards (Sec. 78-677(d)) and the specific standards for PUDs (Sec. 78-678(b)(6)).

25. Sec. 78-677(g) of the County Zoning Ordinance establishes additional general standards for the issuance of a CUP related to a PUD. It reads in pertinent part as follows:

> Before any conditional use permit is issued, the board of adjustment shall make written findings certifying compliance with the specific rules governing the individual conditional use and that satisfactory provision and arrangement has been made for at least the following, where applicable:
>
> (1) The proposed use will not adversely affect the health or safety of persons residing or working in the neighborhood of the proposed use.
> (2) The proposed use will not be detrimental to the public welfare or injurious to property or public improvements in the neighborhood.
> (3) The proposed use will not cause or have adverse effects on surrounding properties due to noise, vibration, odor, or glare effects.
> (4) Satisfactory ingress and egress for the proposed use of the property and proposed structures has been provided. Particular attention has been paid to automotive and pedestrian safety and convenience, traffic flow and control.
> (5) Provision of off-street parking and loading areas where required, with particular attention to the items in section 78-658.
> (6) Provision of adequate and proper utilities, with reference to locations, availability, and compatibility.

(7) Buffering, with reference to type, location, and dimensions. The board of adjustment shall exercise ultimate discretion as to whether adequate buffering has been provided.

(8) Signs, if any, and proposed exterior lighting, with reference to glare, traffic safety, economic effect, and compatibility and harmony with properties in the district.

(9) Playgrounds, open spaces, yards, landscaping, access ways, and pedestrian ways, with reference to location, size, and suitability.

(10) Buildings and structures, with reference to location, size, and use.

(11) Hours of operation, with particular reference to protecting and maintaining the character of the neighborhood.

26. Upon information and belief, as part of the April 11th Hearing, the County Planner Deborah Truempy testified and presented a written recommendation that showed that the Project complied with the CUP standards for the Project. She stated in pertinent part as follows:

(a) A traffic study was provided by the Petitioner which concluded that the additional traffic generated is not anticipated to degrade general roadway or driver safety at the intersections studied: site at Moffitt Road; Moffitt Road at Moffitt Branch Road; Moffitt Branch Road at US 70; and US 70 at Porter Creek Road.

(b) The Fire Marshall's Office has approved the plan for emergency access and the erosion control and storm water conceptual plans have been found adequate by those departments.

(c) The Project will provide much needed rental units on the east side [of Buncombe County] with a workout facility, community clubhouse, pool, and nature trails along the Swannanoa River.

(d) The property entrance will meet NCDOT requirements and internal vehicular circulation will provide adequate 2-way traffic flow and parking. Sidewalks will connect the residential units to community amenities.

(e) Approximately 15.6 acres will be preserved as open space and all other areas will be landscaped.

27. Several documented experts in traffic and civil engineering testified on behalf of RAB regarding the Project's adherence to the standards in the County Zoning Ordinance and the positive attributes related to erosion, storm water, traffic and aesthetics.

28. During the April 11th Hearing, upon information and belief, nine (9) persons spoke in opposition to the Project ("Opposition") without clear evidence (except for Tim Burlson) of their ownership or occupancy of property in proximity to the Site. They addressed generalized, nonspecific concerns about the Project, including traffic impacts, character of the area, noise, erosion, effects on the Swannanoa River, lighting, and buffers ("Opposition Testimony").

29. After closing the public hearing, the BOA, by a 5-2 vote, decided to deny RAB's CUP. Several members deliberated regarding the basis for their decision as follows:

(a) BOA member Christ felt the proposal did not seem to fit into the character of the neighborhood.

(b) BOA member Stephens raised concerns about the height of buildings and the added traffic to the roads.

(c) BOA member Ball raised concerns about the scale of the Project. Commissioner Tyler Lewis stated that Moffitt Road was required by County code to be 24 feet in travelable area (pavement plus shoulders) when the code only imposes such standards for streets to be developed within the proposed Project.

30. On May 9, 2018, the BOA issued a written decision, a copy of which is attached as Exhibit "A" and incorporated herein by reference (the "Order"). In the Order, the BOA concluded that the Project did not comply with subparagraph (2) of Sec. 78-677(g) of the County Zoning Ordinance, to wit: "The proposed use will not be detrimental to the public welfare or injurious to property or public improvements in the neighborhood".

31. The BOA's singular so-called finding of fact in the Order to support its conclusion in paragraph 31 above was that the Project would "change the character of the surrounding area."

32. On April 16, 2018, Nate Pennington, Buncombe County Planning Director, admitted to Jason Gilliland, Project design engineer, in a follow up call regarding the results of the April 11th Hearing that planning staff was considering a training session to the BOA, particularly for new members, to clarify and clearly define the role and duty the board is responsible to uphold.

33. After May 9, 2018, Petitioner received a copy of the Order.

34. Petitioner has timely appealed the Order to Buncombe County Superior Court.

35. Petitioner has standing to bring this action as a result of being the applicant before the decision-making board whose decision is being appealed and for having a contract to purchase the property that is the subject of the decision being appealed as both are provided for in N.C. Gen. Stat. §160A-393(d)(1).

## Count One

### Errors of Law

36. Petitioner incorporates by reference the allegations contained in paragraphs 1-35 above.

37. The BOA committed an error of law in finding and/or concluding in its Order that Petitioner had not made out a *prima facie* showing of compliance with all of the standards for a CUP, including those set forth in Secs. 78-677(g) and 78-678(b)(6) of the County's zoning ordinance. There are no findings to the contrary which are supported by substantial and competent evidence appearing in the record.

38. Specifically, the BOA's finding that the Project will adversely affect the character of the area is not listed as one of the conditions in Secs. 78-677(g) or 78-678(b)(6) and is *ultra vires*. Assuming *arguendo* that such finding is relevant, it is not supported by substantial and competent evidence in the record.

39. Specifically, Petitioner presented substantial and competent evidence that the Project would not be detrimental or injurious to property or public improvements in the neighborhood by showing, among other things, compliance with all the technical standards for a PUD in R-2 district, by offering the expert testimony and documentary evidence regarding traffic impacts, by preserving massive amounts of buffering and open space on the Site and by the County staff report.

40. The BOA's decision was not grounded on findings against the Project regarding adverse effects on health or safety of persons residing or working in the neighborhood as stated in subparagraph (1) of Sec. 78-677(g) or causing adverse effects on surrounding properties in subparagraph (2) of Sec. 78-677(g).

41. The inclusion of a particular use in a zoning ordinance as one which is permitted under certain conditions, as here the use of property for PUDs in a R-2 district, is equivalent to a legislative finding that the prescribed use is one which is in harmony with

the other uses permitted in the district, the surrounding area and the general zoning plan. Such inclusion by definition is in accord with the purpose and intent of the ordinance. There was no competent and substantial evidence presented in the record to rebut this presumption of harmony arising from the County's legislative decision to allow PUDs in R-2.

42. The Opposition Testimony constituted speculative assertions and mere opinion evidence by laymen that does not as a matter of law constitute competent evidence based on case law and the application of G.S. 160A-393(k)(3). The expression of generalized fears does not constitute a competent basis for denial of a permit.

43. None of the Opposition presented any mathematical studies or factual basis for their opinions regarding how the Project would impact the so-called "public welfare" or the surrounding road network or neighboring community, including traffic. There was no expert opinion presented by the Opposition to quantitatively link any observations or opinions to the BOA's denial of the CUP.

44. The Opposition Testimony focused on the Project's perceived impact on the R-1 zoned property to the North, without regard to the zoning and current uses in the whole area. From the various maps submitted during the proceedings, it is readily apparent that the Site is in a neighborhood that includes a substantial amount of R-2 zoned property and R-3 zoning, which district permits even more intensive development, such as mobile home parks. The Site is also in close proximity to a large mobile home park and U.S. 70, a major State highway. The BOA committed an error of law in failing to account for the zoning and use of the whole surrounding area, and also the stated intent of R-2 when read in conjunction with the specific standards for PUD developments.

45. In its Order, the BOA committed an error of law, and acted *ultra vires*, by grounding its CUP denial, in part, on a standard not in the County Zoning Ordinance, to wit: "The proposed Conditional Use Permit will not conform to the requirements and spirit of the Buncombe County Zoning Ordinance."

46. The Petitioner presented competent and substantial evidence of compliance with all the requirements for the Project on the Site - a PUD Level I in a R-2 district – and there was no competent and substantial evidence presented to the contrary. The "spirit" of the County Zoning Ordinance is informed by the specific standards for PUDs, including density and setbacks, which in this case the Project fully complied with.

47. Sec. 78-677(g)(2), and particularly its reference to "detrimental to the public welfare", and the so-called criteria mentioned in paragraph 46 above, are too vague, indefinite and overbroad to be enforceable for failing to set forth adequate standards and

guidelines providing certainty, definiteness and uniformity to guide developers, administrative officials, zoning boards and the courts with their proper application and to otherwise prevent and limit unbridled discretion.

48. The BOA's denial of Petitioner's CUP for the reasons stated was effectively a rezoning of the Site and an unlawful exercise of legislative power in violation of Article II, Section 1 of the North Carolina Constitution. Sec. 78-677(g)(2) is unconstitutional and void for failing to furnish a standard can be uniformly applied and leaves the right of property subject to the unguided will of the BOA who has exercised it to give exclusive privileges to the Opposition to effectively convert the Site to a R-1 zoning, rather than what it is zoned for which is R-2.

49. The BOA's denial lacks an essential nexus with and rough proportionality to the impacts of the Project, contrary to *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309 (1994) and *Koontz v. St. Johns River Water Management Dist.*, 133 S.Ct. 2586 (2013).

## Count Two

### Arbitrary and Capricious, Findings and Decision Not Supported by Record

50. Petitioner incorporates by reference the allegations contained in paragraphs 1-49 above.

51. The BOA's Order is not supported by competent, material and substantial evidence and is therefore arbitrary and capricious in that the uncontroverted evidence in the record is that the Project meets all the requirements for issuance of a CUP, including that the proposed use is in harmony with the allowable uses within the R-2 district, the surrounding area and the general zoning plan.

52. The following BOA's Findings of Facts ("FOF") and/or Conclusions of Law ("COL") in its Order are not supported by competent, material and substantial evidence in the record: FOF #9; COL #2, 3, 4.

53. Since the BOA's Order denying Petitioner's CUP is not supported by competent, material and substantial evidence, it is arbitrary and capricious and constitutes a manifest abuse of discretion.

54. The BOA failed to indicate any course of reasoning for its decision, acted in complete disregard of facts or law, including not following the directive of the County staff, and rejected the Project without any determining principle. The BOA's decision

ignored the staff's recommendations, was grounded in standards not found in the ordinance, and was based on a preference for favoring generalized, sentimental, speculative and vague concerns expressed by the Opposition.

### Count Three

### Constitutional Violations

55. Petitioner incorporates by reference the allegations contained in paragraphs 1-54 above.

56. In North Carolina, a property owner or permit applicant such as Petitioner has a right to make any lawful use of his or her land as he or she sees fit.

57. By the County's actions referenced above, the County has failed to clearly place the Petitioner on notice as to what standards are reasonably applicable to a developer concerning PUD standards in the R-2 district. The basis for the BOA denial is so fraught with uncertainty, vagueness or indefiniteness of its limitations as to be unenforceable as a matter of procedural due process under our Federal and State Constitutions. Said failure to provide a uniform rule of action leaves the Petitioner subject to the unguided or unbridled discretion of the BOA, which body did in fact exercise it so as to improperly give exclusive privileges to the Opposition, and in a manner that is arbitrary, oppressive and attended with manifest abuse of authority.

58. The BOA's actions denying Petitioner's CUP constituted an unlawful exercise of legislative power in violation of Article II, Section 1 of the North Carolina Constitution.

59. Substantive due process protects the Petitioner from government action that unreasonably deprives it of a liberty or property interest. Governmental action must have a rational connection to a valid state objective, and not be unreasonable, arbitrary or capricious. This is a guaranty provided by the law of the land clause in Article I, Section 19 of the North Carolina Constitution and the 14th Amendment to the United States Constitution.

60. At all relevant times hereto, Petitioner had a fundamental property interest in the lawful use of the Site.

61. Since the BOA acted in excess of its legal authority, without an adequate grounding in a valid state objective, and for being arbitrary and capricious in its decision making, the BOA violated Petitioner's substantive due process rights.

62. By denying the Project for the reasons stated, the BOA acting in excess of its legal authority and Petitioner has been deprived of its property rights without just compensation in contravention of Article I, Section 19 of the North Carolina Constitution and the 14th Amendment to the United States Constitution.

WHEREFORE, the Petitioner prays the Court as follows:

1. That a Writ of Certiorari ("Writ") be issued to the Respondent, Buncombe County, by which the County shall certify to this Court within thirty (30) days from the date of the Writ the complete record of the proceedings, including the April 11, 2018 hearing, any exhibits, minutes, stenographic recordings, and audio tapes concerning the zoning board's decision as set forth in this Petition that is the subject matter of this appeal

2. That the Court, for any and all reasons enumerated above, reverses the decision of the Respondent County's Zoning BOA, and remand the matter to said agency instructing it to issue the CUP for the Project along with a determination of vested rights for the requested 5-year period.

3. That the costs of this action be taxed to the Respondent.

4. For attorney's fees incurred by Petitioner in defense of the County's actions pursuant to N.C. Gen. Stat. §6-21.7.

5. For such further relief this Court deems just and proper.

This the 7th day of June, 2018.

                  VAN WINKLE, BUCK, WALL,
                  STARNES AND DAVIS, P.A.

                  By: _____
                  Craig Dixon Justus
                  Attorney for Petitioner
                  11 North Market Street
                  Post Office Box 7376
                  Asheville, NC 28802
                  Telephone: (828) 258-2991
                  Facsimile: (828) 257-2767